FILED
April 02, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: D. Trujillo
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | **S E A L E D** |
| **Plaintiff,** | § | **CASE No: EP:23-CR-01842-DB** |
| **v.** | § | **SECOND SUPERSEDING INDICTMENT** |
| **(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ, also known as (a.k.a.): "Chayo," and "Fernanda";** | § | **CTS 1&2:** 21:846 & 841(a)(1)-Conspiracy to Possess a Controlled Substance with Intent to Distribute; |
| | § | **CT 3:** 18:932-Straw Purchasing Firearms |
| | § | **CT 4:** 18:933-Trafficking in Firearms |
| | § | **CTS 5, 6, 7 & 11:** 21:846(a)(1)-Possession of a Controlled Substance with Intent to Distribute |
| **Defendants.** | § | **CT 8:** 18:371 & 31:5332-Bulk Cash Smuggling Conspiracy |
| | § | **CT 9:** 8:1324(a)(1)(A)(v)(I), (a)(1)(A)(i) and (a)(1)(B) (i) - Conspiracy to Bring in Aliens; |
| | § | **CT 10:** 8:1324(a)(1)(A)(v)(I), (a)(1)(A)(ii) and (a)(1)(B)(i) - Conspiracy to Transport Aliens; |
| | § | **CT 12:** 18:2339B(a)(1)-Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization; |
| | § | **CT 13:** 18:2339B(a)(1)-Provision of Material Support to a Designated Foreign Terrorist Organization. |
| | | ***Notice of Government's Demand for Forfeiture*** |

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At times material to this indictment, on or about the dates and approximate times stated below:

**Introduction**

1. The Jalisco New Generation Cartel, a/k/a Cartel de Jalisco Nueva Generacion or CJNG, (Jalisco Cartel) is a Mexico-based transnational criminal group that controls a significant portion of the narcotics trafficking trade. Formed in or about 2011 from the remnants of the Milenio Cartel, which was affiliated with the Sinaloa Cartel, the Jalisco Cartel has a presence in dozens of countries, including the United States. The cartel maintains its vast drug trade through violence, bribery of corrupt officials, and a franchise-based command structure.

2. The Jalisco Cartel is overseen by Nemesio Ruben "El Mencho" Oseguera-Cervantes and a small group of top-tier commanders who report directly to El Mencho. A second tier of bosses operates under the top tier leaders. The franchise model permits each semi-independent group to customize its operations according to specific areas of expertise (for example, running clandestine methamphetamine labs) or market demands, provided it complies with naming, branding, and organizational structure requirements and follows the general direction of Jalisco Cartel leaders. Because new franchises are easy to establish, the franchise model enables the Jalisco Cartel to expand quickly. The Jalisco Cartel also maximizes its revenue through this model, because leadership does not pay the operating costs of its franchises but does collect a percentage of overall profits.

3. The Jalisco Cartel obtains methamphetamine and fentanyl precursor chemical shipments from China and cocaine shipments from South America. The Jalisco Cartel illicitly transports cocaine, methamphetamine, fentanyl, and other controlled substances into the United States. The Jalisco Cartel also engages in money laundering, bribery, extortion of migrants, taxing of migrant smugglers, and other criminal activities, including acts of violence and intimidation.

4. On February 6, 2025, the United States Secretary of State designated CJNG as a foreign terrorist organization (FTO) under section 219 of the Immigration and Nationality Act. The Secretary of State also added the following aliases to the FTO listing: New Generation Cartel of Jalisco, CJNG, and Jalisco New Generation Cartel. The determination that CJNG is an FTO was published in the Federal Register on February 20, 2025.

5. Maria del Rosario NAVARRO-Sanchez, [redacted] support the operations of the CJNG. In support, these defendants participated in and profited from the trafficking of narcotics, the illicit smuggling of firearms, and the smuggling of migrants from Mexico into the United States.

6. This network relied on couriers to smuggle controlled substances, mainly kilogram-quantities of methamphetamine, from Mexico into the Western District of Texas. Once inside the Western District of Texas, the majority of controlled substances are then smuggled to different cities throughout the United States.

7. The defendants also rely on various brokers, such as Co-Conspirator-1 (CC-1), to purchase weapons in the United States. The organization often uses drugs, or drug profits, to fund those purchases. Those weapons are then smuggled into the Republic of Mexico. Firearms are an integral part of CJNG's success. Trafficking of firearms feeds an organizational need to protect and expand the criminal enterprise through firearm-related violence. Firearms are used to protect drug trafficking routes, illicit proceeds from drugs, and drug processing locations.

8. The defendants also participated in alien smuggling to generate wealth. This network charged migrants from various countries a fee to be smuggled into the United States. The defendants used various methods to traffic migrants from Juarez, Mexico and into the Western District of Texas. Once in the United States, the migrants would be smuggled to various destination cities within the interior of the United States.

**Drug Trafficking**

9. In September of 2019, agents executed a search warrant at a stash house linked to NAVARRO-Sanchez. Inside the stash house, which is located within the Western District of Texas, agents found approximately 26 kilograms of methamphetamine.



10. Also inside the stash house, agents found a receipt dated August 2, 2019. The sender listed on the receipt, "Maria Del Rosario Navarro Sanchez," wired money to the stash house operator.

11. [redacted] worked for NAVARRO-Sanchez and the CJNG. [redacted] was responsible for transporting narcotics from stash houses past the immigration checkpoints. On November 6, 2020, federal agents interdicted [redacted] at an immigration checkpoint located within the Western District of Texas. Hidden inside car, agents found approximately 36 kilograms of methamphetamine.

12. Another stash house operator, [redacted] began to work for NAVARRO-Sanchez in the United States starting approximately 2022. NAVARRO-Sanchez would coordinate the delivery of methamphetamine from Mexico into the United States through the El Paso ports of entry. NAVARRO-Sanchez had [redacted] pick-up the narcotics from different couriers around the El Paso area. [redacted] would unload the narcotics, store the

narcotics, and then deliver the narcotics to other couriers who would take the narcotics to different cities throughout the United States.

13. In March of 2023, agents detained [redacted]. On his cell phone, agents found evidence of drug trafficking and firearms smuggling. Agents found hundreds of pictures and messages about weapons commonly acquired by cartels. For example, on [redacted] phone, agents found the weapon pictured below and referred to as “el dorado.” A weapon that this network successfully smuggled to Mexico.



14. Inside a stash house used by [redacted], agents found methamphetamine, fentanyl, and other evidence of trafficking weapons such as firearm parts and empty boxes of firearms.










**Firearms Smuggling**

15. NAVARRO-Sanchez, [redacted] and [redacted] also coordinated the trafficking of weapons from the United States to Mexico. This organization used persons such as CC-1 to collect firearms in the United States. CC-1 purchased firearms through private sellers

or straw purchases. CC-1 would buy the firearms, provide the firearms to [redacted] or another courier, who would then have the weapons smuggled into the Republic of Mexico.

16. In mid-summer of 2023, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) intercepted communications of NAVARRO-Sanchez. During the conversations, agents learned that NAVARRO-Sanchez agreed to purchase twenty AK-47 type firearms and two .50 caliber rifles for $66,000. On August 15, 2023, NAVARRO-Sanchez caused $3,000 to be wired to a person within the Western District of Texas as down payment for the firearms. Unindicted Coconspirator-1 (UIC-1) is the named remitter of the $3,000. Agents also intercepted communications where [redacted] helped facilitate this purchase of firearms.

17. NAVARRO-Sanchez depended on two co-defendants to pay for and retrieve the weapons: [redacted] and [redacted]. On August 21, 2023, and in separate vehicles, [redacted] and [redacted] arrived at a gas station located within the Western District of Texas to receive the twenty AK-47 type firearms and the two .50 caliber rifles. At the gas station, both [redacted] and [redacted] viewed a photograph of the weapons.



[redacted] intended to provide payment for the weapons, while [redacted] would be tasked with smuggling the weapons across the border. Federal agents followed [redacted] from the gas station to the location of the weapons. ATF agents arrested [redacted] as he took possession of the weapons. In August of 2023, an ATF interstate nexus expert reviewed the descriptors of said firearms. ATF personnel determined the firearms were not manufactured in the state of Texas, and therefore affected interstate commerce.

18. After agents arrested [redacted], they seized his cell phone. Agents exploited the evidence in that cell phone to better understand a motive behind the firearms trafficking: supporting CJNG's armed conflict with its rivals, cartels from the neighboring state of Michoacan. In a message exchange between NAVARRO-Sanchez and [redacted] on July 4, 2023, she balked at purchasing a bolt action rifle because "they don't work." In response [redacted] sent the following message:




"What do you mean they don't work, the michoacanos use them and kick the ass of the people you are with." In response, NAVARRO-Sanchez messaged that she wanted a photograph of the

weapon by itself and the price of the weapon.

19. After [redacted] arrest, law enforcement began to intercept communications of NAVARRO-Sanchez, UIC-1, and [redacted]. From the intercepted communications, agents learned that UIC-1 turned to [redacted] for assistance in detecting the presence of law enforcement. From there, agents learned that [redacted] also coordinated the trafficking of firearms that had been purchased in the United States.

20. Effective March 9, 2020, the Commerce Control List ("CCL"), located at Title 15, Code of Federal Regulations, Section 774, details commodities, software, and technology subject to control by the United States Department of Commerce, Bureau of Industry and Security pursuant to the Export Control Reform Act, Title 50, United States Code, Chapter 58.

21. The CCL is part of the Export Administration Regulations ("EAR"), located at Title 15, Code of Federal Regulations, Section 730 et seq. Firearms are designated as controlled items in Section 774, Appendix Supplement Number 1 of the CCL. According to Title 15, Code of Federal Regulations, Section 736.2, a person may not export an item subject to the EAR to another country if exporting that item to that country requires a license.

22. A license is required to export these type of firearms from the United States to the Republic of Mexico. Neither [redacted] NAVARRO-Sanchez, UIC-1, or [redacted] have a license to export firearms.

**ALIEN SMUGGLING**

23. NAVARRO-Sanchez coordinated the smuggling of [redacted] to the United States for the purpose of running a weapons and drug stash house in the Western District of Texas. [redacted] was an alien to the United States without any documentation to be in or enter the United States. Intercepted communications of [redacted] from January of 2025 show that the network has continued to earn money through the smuggling of aliens. From intercepted phone

calls in January of 2025, [redacted] referred to a tunnel that existed between Juarez, Mexico and El Paso, Texas. [redacted] discussed the number of migrants that crossed through the tunnel and how much is charged to use the tunnel.

24. On or about January 10, 2025, federal agents in El Paso, Texas discovered a completed man-made tunnel that spanned from Mexico into the United States. The tunnel linked into the public storm drain system, was approximately six feet tall, four feet wide, equipped with lighting, a ventilation system, and was braced with wood beams throughout.



After the tunnel's discovery, [redacted] was intercepted on calls discussing the discovery of a tunnel. During those calls, [redacted] mentioned that aliens will still be able to be smuggled into the United States through other means.

**MATERIAL SUPPORT**

25. Mexico has strict gun laws that make it difficult for criminals to obtain firearms legally sourced in the country. In Mexico, there is one gun store in the entire nation, and the

Government of Mexico rarely issues gun permits. While there are strong domestic regulations of weapons in Mexico, in 2023, the country had the most gun-related homicides in the world. CJNG has bypassed Mexico's firearms regulations by smuggling weapons from the United States.

26. After the Secretary of State's designation of CJNG as an FTO was published in the Federal Register, NAVARRO-Sanchez and others have conspired to provide material support and resources to the CJNG.

**COUNT ONE**

(CONSPIRACY TO POSSESS A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

Beginning on or about August 1, 2019, and continuing through and to include April 2, 2025, in the Western District of Texas, the Republic of Mexico, and elsewhere, defendants,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda" and**
[redacted]

knowingly, intentionally, and unlawfully conspired, combined, confederated, and agreed together, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess a controlled substance, which offense involved methamphetamine, a Schedule II Controlled Substance, with intent to distribute same, contrary to Title 21, United States Code, Sections 841(a)(1) in the quantities set forth below:

**QUANTITY OF CONTROLLED SUBSTANCE INVOLVED IN THE CONSPIRACY**

The quantity of methamphetamine involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant is as follows:

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
| **(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ, also known as (a.k.a.): "Chayo," and "Fernanda"** | 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine | 841(b)(1)(A)(viii) |
| [redacted] | 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine | 841(b)(1)(A)(viii) |

All in violation of Title 21, United States Code, Section 846.

**COUNT TWO**
(CONSPIRACY TO POSSESS A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

That beginning on or about August 1, 2019, up to and including April 2, 2025, in the Western District of Texas, the Republic of Mexico and elsewhere, Defendant,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda"**

knowingly, intentionally, and unlawfully conspired, combined, confederated, agreed together, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess a controlled substance, which offense involved N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (otherwise known as fentanyl), a Schedule II Controlled Substance, with intent to

distribute same, in violation of Title 21, United States Code, Section 841(a)(1) in the quantities set forth below:

**QUANTITY OF CONTROLLED SUBSTANCE INVOLVED IN THE CONSPIRACY**

The quantity of the mixture or substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (otherwise known as fentanyl) involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant is as follows:

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
| **(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ, also known as (a.k.a.): "Chayo," and "Fernanda"** | 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (otherwise known as fentanyl) | 841(b)(1)(B)(vi) |

All in violation of Title 21, United States Code, Section 846.

**COUNT THREE**
(STRAW PURCHASING FIREARMS)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

That beginning on or about August 1, 2022, up to and including April 2, 2025, in the Western District of Texas, the Republic of Mexico and elsewhere, defendants,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda"**
[redacted]

knowingly, intentionally, and unlawfully conspired, combined, confederated, agreed together, and with others to the Grand Jury known and unknown, to commit offenses against the United States,

in violation of Title 18, United States Code, Section 932, that is to say, they conspired to purchase firearms in and otherwise affecting interstate commerce for, on behalf of, and at the request and demand of any other person, knowing or having reasonable cause to believe that such other person intends to use, carry, possess, and sell and otherwise dispose of the firearm in furtherance of a felony, to wit, Smuggling of Goods from the United States under 18 U.S.C. Section 554, and a drug trafficking crime, as charged in Counts 1 and 2, as defined in section 932(a). All in violation of Title 18, United States Code, Section 932 (a), (b), & (c).

**COUNT FOUR**
(FIREARMS TRAFFICKING)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

That beginning on or about August 1, 2022, up to and including April 2, 2025, in the Western District of Texas, the Republic of Mexico and elsewhere, defendants,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda"**
[redacted]

knowingly, intentionally, and unlawfully conspired, combined, confederated, agreed together, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 18, United States Code, Section 933, that is to say, they conspired to ship, transport, transfer, cause to be transported, and otherwise disposed of any firearm to another person in and otherwise affecting interstate commerce, knowing and having reasonable cause to believe that the use, carrying, and possession of a firearm by the recipient would constitute a felony, to wit: Smuggling of Goods from the United States under 18 U.S.C. Section 554, and a drug trafficking crime, as charged in Counts 1 and 2, as defined in section 932(a). All in violation of Title 18, United States Code, Section 933(a)(1), (a)(3) and (b).

**COUNT FIVE**
(POSSESSION WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE)

That on or about March 30, 2023, in the Western District of Texas, Defendant,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

**COUNT SIX**
(POSSESSION WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE)

That on or about March 31, 2023, in the Western District of Texas, Defendant,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

**COUNT SEVEN**
(POSSESSION WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE)

That on or about March 31, 2023, in the Western District of Texas, Defendant,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved a 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (otherwise known as fentanyl), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(b)(vi)).

**COUNT EIGHT**
(371 CONSPIRACY – BULK CASH SMUGGLING)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

That on or about August 21, 2023, in the Western District of Texas and the Republic of Mexico, Defendant,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda"**

together with others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree to commit certain offenses against the United States, to wit: to knowingly concealing more than $10,000 in currency and other monetary instruments on a person and in a conveyance, with the intent to evade a currency reporting requirement under Title 31, United States Code, Section 5316, and did transport and attempt to transport such currency and monetary instruments from a place outside the United States to a place inside the United States, in violation of Title 31, United States Code, Section 5332.

**MANNER AND MEANS**

It was part of the conspiracy that [redacted] received money from **MARIA DEL ROSARIO NAVARRO-SANCHEZ.** [redacted] used a money courier, who would travel from Juarez, Mexico with a sum of money exceeding $10,000, concealed on his person or conveyance in order to transport the money into the United States without declaring the money at the port of entry.

**OVERT ACTS**

In furtherance of the conspiracy and to achieve the objects thereof, **NAVARRO-SANCHEZ,** and her co-conspirators, committed and caused to be committed the following overt acts in the Western District of Texas and elsewhere:

**<u>Overt Act 1</u>**: On August 21, 2023, **NAVARRO-SANCHEZ**, while in the Republic of Mexico, gave approximately $60,000 to [redacted]

**<u>Overt Act 2</u>**: On August 21, 2023, [redacted], while in the Republic of Mexico, provided the $60,000 to another person – Coconspirator-2 (CC-2);

**<u>Overt Act 3</u>**: On August 21, 2023, [redacted] entered the United States at the Paso Del Norte Port of Entry at approximately 4:15 p.m. Approximately 15 minutes later, CC-2 entered the United States at the Paso Del Norte Port of Entry. Neither [redacted] nor CC-2 declared the $60,000 upon entering the United States.

**<u>Overt Act 4</u>**: On August 21, 2023, once in the Western District of Texas, CC-2 provided the $60,000 to [redacted]

**<u>COUNT NINE</u>**
(CONSPIRACY TO BRING IN ALIENS)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

That beginning on or about January 1, 2022, up to and including April 2, 2025, in the Western District of Texas, the Republic of Mexico and elsewhere, defendants,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda" and**
[redacted]

knowingly, intentionally, and unlawfully conspired, combined, and confederated, and agreed with others known and unknown to the Grand Jury, to commit an offense against the United States, namely: to bring to and attempt to bring to the United States certain aliens, at a place other than a designated port of entry, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I), (a)(1)(A)(i) and (a)(1)(B)(i).

**COUNT TEN**
(CONSPIRACY TO TRANSPORT ALIENS)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

That beginning on or about January 1, 2022, up to and including April 2, 2025, in the Western District of Texas, the Republic of Mexico and elsewhere, defendants,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda" and**
[redacted]

knowingly, intentionally, and unlawfully conspired, combined, and confederated, and agreed with others known and unknown to the Grand Jury, to commit an offense against the United States, namely: to transport and move and attempt to transport and move aliens within the United States knowing and in reckless disregard of the fact that said aliens had come to, entered, and remained in the United States in violation of law, said transportation being in furtherance of said violation of law, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii) and (a)(1)(B)(i).

**COUNT ELEVEN**
(POSSESSION WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

That on or about November 6, 2020, in the Western District of Texas, Defendant,

[redacted]

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

**COUNT TWELVE**
(CONSPIRACY TO PROVIDE MATERIAL SUPPORT TO A DESIGNATED FOREIGN TERRORIST ORGANIZATION)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

Beginning on or about February 20, 2025, and continuing through and including on or about April 2, 2025, in the Western District of Texas, the Republic of Mexico, and elsewhere,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda"**

and others (hereinafter referred to as "the members of the conspiracy"), did knowingly and willfully combine, conspire, confederate and agree with others known and unknown, to provide and attempt to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including the following tangible and intangible property: firearms, to wit: grenades, and personnel, to wit: herself, to a foreign terrorist organization, namely, CJNG, which at all relevant times was designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that CJNG was a designated foreign terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that CJNG engages and has engaged in terrorist activity (as defined in Section 212(a)(3)(B) of the Immigration and Nationality Act), and that CJNG engages and has engaged in terrorism (as defined in Section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

All in violation of Title 18, United States Code, Section 2339B(a)(1).

**COUNT THIRTEEN**
(PROVISION OF MATERIAL SUPPORT TO A DESIGNATED FOREIGN TERRORIST ORGANIZATION)

The General Allegations of this indictment are re-alleged and fully incorporated here by reference.

Beginning on or about February 20, 2025, and continuing through and including on or about March 16, 2025, in the Western District of Texas, the Republic of Mexico, and elsewhere, with the Western District of Texas also being the district where the Defendants will first be brought for the purpose of Title 18, United States Code, Section 3238, the Defendant,

**(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ,**
**also known as (a.k.a.): "Chayo," and "Fernanda"**

did knowingly provide and attempt to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including the following tangible and intangible property: firearms, to wit: grenades, and personnel, to wit: herself, to a foreign terrorist organization, namely, CJNG, which at all relevant times was designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that CJNG was a designated foreign terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that CJNG engages and has engaged in terrorist activity (as defined in Section 212(a)(3)(B) of the Immigration and Nationality Act), and that CJNG engages and has engaged in terrorism (as defined in Section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

All in violation of Title 18, United States Code, Section 2339B(a)(1).

**NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE**
**[*See* Fed. R. Crim. P. 32.2]**

**I.**
**Drug Violation and Forfeiture Statutes**
**[Title 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii) and (b)(1)(B)(vi), subject to forfeiture pursuant to Title 21 U.S.C. §§ 853(a)(1) and (2)]**

As a result of the foregoing criminal violations set forth in Counts One, Two, Five, Six, Seven, and Eleven the United States gives notice to Defendants **(1) MARIA DEL ROSARIO NAVARRO SANCHEZ a.k.a. "Chayo" and "Fernanda",** [redacted]

[redacted] of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 21 U.S.C. §§ 853(a)(1) and (2), which state:

> **Title 21 U.S.C. § 853. Criminal Forfeitures**
> **(a) Property subject to criminal forfeiture**
> * * *
> **(1)** any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
> **(2)** any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

**II.**
**<u>Firearms Violation and Forfeiture Statutes</u>**
**[Title 18 U.S.C. §§ 932(a), (b) and (c), 933(a)(1), (a)(3), and (b), subject to forfeiture pursuant to Title 18 U.S.C §§ 934(a)(1)(A) and (B)]**

As a result of the criminal violations set forth in Counts Three and Four, the United States of America gives notice to Defendants **(1) MARIA DEL ROSARIO NAVARRO SANCHEZ a.k.a. "Chayo" and "Fernanda",** [redacted] of its intent to seek the forfeiture of the property described below upon conviction and pursuant to Fed. R. Crim. P. 32.2, Title 18 U.S.C. §§ 934(a)(1)(A) and (B), which state:

> **Title 18 U.S.C. § 934. - Forfeiture and Fines**
> **(a) Forfeiture.**
> (1) In General.— Any person convicted of a violation of section 932 or 933 shall forfeit to the United States, irrespective of any provision of State law—
> (A) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; and
> (B) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, except that for any forfeiture of any firearm or ammunition pursuant to this section, section 924(d) shall apply.

**III.**
**<u>Transportation of Aliens Violation and Forfeiture Statutes</u>**
**[Title 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(i), (a)(1)(B)(i) and (a)(1)(A)(ii), subject to forfeiture pursuant to Title 18 U.S.C. §§ 982(a)(6)(A) and (B), and Title 8 U.S.C. § 1324(b)(1), as made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the foregoing criminal violations set forth in Counts Nine and Ten, the United

States of America gives notice to Defendants **(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ a.k.a. "Chayo" and "Fernanda",** [redacted] of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2, Title 18 U.S.C. §§ 982(a)(6)(A) and (B), and Title 8 U.S.C. § 1324(b)(1), as made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which state:

> **Title 18 U.S.C. § 982. Criminal Forfeiture**
> **(a)(6)(A)** The court, in imposing sentence on a person convicted of a violation of, or conspiracy to violate, section 254(a), 274A(a)(1), or 274A(a)(2) of the Immigration and Nationality Act or section 555, 1425, 1426, 1427, 1541, 1542, 1543, 1544, or 1546 of this title, or a violation of, or conspiracy to violate, section 1028 of this title if committed in connection with passport or visa insurance or use, shall order that the person forfeit to the United States, regardless of any provision of State Law—
> **(i)** any conveyance, including any vessel, vehicle or aircraft used in the commission of the offense of which the person is convicted; and
> **(ii)** any property real or personal—
> **(I)** that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or
> **(II)** that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted.
> **(B)**The Court, in imposing sentence on a person described in subparagraph (A), shall order that the person forfeit to the United States all property described in that subparagraph.
>
> **Title 8 U.S.C. § 1324(b) Seizure and Forfeiture**
> **(1)** In general
> Any conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of a violation of subsection (a), the gross proceeds of such violation, and any property traceable to such conveyance or proceeds, shall be seized and subject to forfeiture.

**IV.**
**Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization Violation and Forfeiture Statutes**
**[Title 18 U.S.C. §§ 2339B(g)(6) and 2339A(b), subject to forfeiture pursuant to Title 18 U.S.C. §§ 981(a)(1)(C) and (G), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the foregoing criminal violations set forth in Count Twelve and Thirteen, the United States gives notice to Defendant **(1) MARIA DEL ROSARIO NAVARRO SANCHEZ a.k.a. "Chayo"** of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed R. Crim. P. 32.2 and Title 18 U.S.C. §§ 981(a)(1)(C) and (G), as made applicable

to criminal forfeiture by Title 28 U.S.C. § 2461(c), which state:

**Title 18 U.S.C. § 981 Forfeiture**
**(a)(1)** The following property is subject to forfeiture to the United States:
* * *
**(C)** Any Property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.
* * *
**(G)** All assets, foreign, or domestic—

**(i)** of any individual, entity, or organization engaged in planning or perpetrating any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizen or residents of the United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization;

**(ii)** acquired or maintained by any person with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism (as defined in section 23332b(g)(5)) against the United States, citizens or residents of the United States, or their property;

**(iii)** derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property; or

**(iv)** of any individual, entity, or organization engaged in planning or perpetrating any act of internation terrorism (as defined in section 2331) against any international organization (as defined in section 209 of the State Department Basic Authorities Act of 1956 (22 U.S.C. 4309(b)) or against any foreign Government. Where the property sought for forfeiture is located beyond the territorial boundaries of the United States, an act in furtherance of such planning or perpetration must have occurred within the jurisdiction of the United States.

This Notice of Demand for Forfeiture includes but is not limited to the property described below in Paragraph V and Money Judgment in Paragraph VI.

**V.**
**Property**

1. $3,000.00, more or less, in United States currency; and
2. Any and all firearms, ammunition, and/or accessories involved in or used in the commission of the criminal offenses.

**VI.**
**Money Judgment**

A sum of money that represents the amount of proceeds obtained, directly or indirectly, property involved in such offense, or traceable to such property as a result of the violations set

forth in Counts One through Seven and Counts Nine through Thirteen for which Defendants **(1) MARIA DEL ROSARIO NAVARRO-SANCHEZ a.k.a. "Chayo" and "Fernanda",** [redacted] are individually liable.

**Substitute Assets**

If any of the above listed forfeitable property, as a result of any act or omission of the Defendants:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third person;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture, pursuant to Title 21 U.S.C. § 853(p), as incorporated by Title 28 U.S.C. § 2461(c), of any other property of said Defendants up to the value of the forfeitable property.

A TRUE BILL.

[redacted]
FOREPERSON OF THE GRAND JURY

MARGARET F. LEACHMAN
ACTING UNITED STATES ATTORNEY

BY: ______________________
Kyle Myers
Assistant United States Attorney

MATTHEW R. GALEOTTI
HEAD OF THE CRIMINAL
DIVISION DEPARTMENT OF
JUSTICE

BY: ______________________
Ryan Lipes
Trial Attorney
Human Rights and Special Prosecutions Section